Please come forward. I understand you are going to be splitting your time 4-4-2, is that correct? Yes. And are you dividing the issues in any particular way? We are. I will be discussing the clearly established prong of qualified immunity and my co-counsel will be discussing the Eighth Amendment violation. Okay. All right. Thank you. Go ahead, please. Good morning, Your Honors, and may it please the Court. My name is Dominique Cato and I, along with my co-counsel, Alice Chang, represent appellant Roy Moraga. At this time, we would like to request two minutes for rebuttal. Defendants are not entitled to qualified immunity because the law was clearly established at the time of their conduct in 2021. As an initial matter, Moraga would note that the District Court did not reach this issue and therefore this Court should remand. However, if this Court were to decide on qualified immunity, we ask that you find defendants are not entitled to it. First, I would like to distinguish between Carly v. Aronis. That case does not control for two reasons. First, Carly dealt with the claim that the NDOC medical directive was unconstitutional and no such claim is present here. Instead, we are arguing that the defendants failed to comply with the policy. Second, Carly dealt with an entirely different right at issue. There, the question was whether a prison medical director would have had noticed that the NDOC hepatitis policy was unconstitutional at the time. And here, our right at issue is the right against a denial, delay, or an intentional interference with adequate medical treatment for hepatitis C, especially when in violation of a prison health care policy. May I ask you a question on that? Doesn't Carly specifically reject that? There's language in Carly that says, it's true we've held that prison doctors are deliberately indifferent when they fail to provide or delay providing necessary medical treatment. But again, we believe this defines the right too broadly in light of our precedent that requires to look at the law in light of the specific context of the case, not as a broad general proposition. Yes, your honor. However, we're arguing that ours is particularized to the facts of our case, given that this court's precedent in Tatum v. Winslow, which held that a delay or denial of hepatitis C treatment was clearly established. And this court denied qualified immunity and summary judgment in that case. Additionally, Tatum also involved a hepatitis C policy, which received the blessings of the Madrid court, which this court said that the health care manager had every reason to believe that violating it constituted a violation of clearly established law. And similarly here, the NDSC... So what is the exact violation here? Your honor... More specific, just right, denial of right to treatment is too general. What is it specifically? It's the right to adequate monitoring and including a new APRI score, which the NDSC medical directive 219 at ER 131 states. And where have you raised that in, I guess, where could I find that in the record? Because I think he says, I requested to start the hep C treatment, which is pretty general and best read as an attempt to invoke the medical directive. Yes, your honor. We discussed that in our reply brief. We bring that up. Why would that be enough? It was, I guess, surprising not to see Carly addressed at the outset. So why should framing this in your reply brief not be viewed as not raising the issue properly to begin with in the appeal? Your honor, we replied to the defendant's argument of qualified immunity, which we were applying. We didn't bring up qualified immunity because we don't believe defendants are entitled to it. Again, Carly doesn't clarify the right to issue in this case, which is the denial or delay of hepatitis C treatment. And coupled with the violation of the policy. Why could the prison staff not rely on Carly for purposes of qualified immunity? Because Carly was dealing with the whether the hepatitis C policy was unconstitutional at the time. Here, we're arguing that they failed to comply with the policy, not that the NDOC policy is unconstitutional. Let's talk about that policy. So you're saying the violation is the right to adequate monitoring. Is that right? Yes. Well, okay. So if I look at MD 219, it says any inmates with HCV who have not been treated with DAAs will be evaluated every six months, including obtaining a new APR-I score. I think it's been clear from the testing that was done on Mr. Muraga that he didn't have HCV. His APR-I score was too low. It was within the normal range. So he wasn't entitled to get the DAA, the direct acting antiviral treatment, even according to MD 219. Your Honor, they were- So what is the monitoring that he didn't get if he, or actually point me to a specific provision of 219 that says that someone with Mr. Muraga's health scores would have been entitled to more monitoring? Your Honor, we want to point out that the only APR-I score in the record is from February 25th of 2022. This was at least a year after Muraga submitted his grievances and is the one that the defendants are relying on. Additionally, even after six months of February, there was no other APR-I score. There should have been one in August. However, there's nothing in the record that states that. They were required to have- Why is he entitled to a score, an APR-I score every six months, if he doesn't have HCV and he's not entitled to the direct anti or acting antiviral treatment? Because if I, I mean, you need to point me to where in MD 219 does it say that somebody in Mr. Muraga's situation is entitled to get new APR-I? My understanding is the reason you get APR-I scores every six months, if you have HCV, is so that they can determine whether your priority, since MD 219 is a prioritization scheme of this treatment, of whether your priority should be increased based on the fact that your APR-I score is getting worse, so your conditions are getting worse. So if you're not even entitled to get the DAA treatment in the first place, what says you get every six-month new APR-I scores? Your Honor, it is a genuine dispute of material fact of whether Muraga has hepatitis C, and therefore, he had not been treated with DAAs and he should have been evaluated every six months. The defendants prioritized the policy and the APR-I scoring based on the score, and therefore, they should have done the score every six months. Okay, show me where in the record it says he has hep C, right? Because his viral load was undetected, right? His APR-I score is within normal range. He has no fibrosis. His abdominal x-ray is normal. Show me where in the record he has HCV. Your Honor, that is for my co-counsel to discuss. However, the undetected score doesn't underlie the fact that he didn't have hep C at any point in time. If there are no further questions to qualified immunity, I'll turn to my co-counsel. That's fine, thank you. Good morning, Your Honors, and may it please the Court. Alice Chang on behalf of Mr. Muraga. Mr. Muraga's Eighth Amendment claim survives summary judgment for three reasons. First, there is a genuine issue of material fact as to whether Muraga had chronic hep C. Second, defendant's denial of crucial medical treatment caused Muraga further injury. And finally, defendants are each liable for deliberate indifference. To my first point, the district court correctly found that the record indicates a genuine issue of material fact as to how, whether Muraga has chronic hep C. First, at ER 264, based on Muraga's visit at the chronic care clinic on February 18, 2021, the doctor specifically documented one of his specific illnesses as hep C. Okay, I'm looking at ER 264, and the assessment just showed diabetes and hypertension. Your Honor. He may have come in and said, hey, I was at some point in my life exposed to hep C, but when they did the testing, what they determined he actually had at that moment was diabetes and hypertension. Your Honor, the record indicates at the top that one of his specific illness is hep C. If the fact that the rest of the record does not discuss his hep C diagnosis indicates that these defendants did not monitor him for this hep C illness in compliance with medical directive 219. Why wasn't that just a mistake or a cautionary assumption going in? Is there any evidence after the test came back and the follow-up tests came back negative? Is there any evidence after that point that he had hep C? To clarify, the HCV test of whether he had hep C occurred in November of 2022. This record of his visit at the chronic care clinic for hep C occurred in around February, 2021, when Muraga submitted his complaints and his grievances. And furthermore, as indicated at ER 241 and ER 243, both defendants Rambo and defendants Menev acknowledged that he was enrolled in the chronic care clinic for hep C. And as, excuse me, defendant Richard and defendant Menev. As defendant Richard indicated in her grievance response at ER 243, she stated that, she outlined the process of enrollment in the chronic care clinic and stated that- Do you believe that if someone has been exposed to hep C, they can show reactivity to an hep C antibody, but they won't necessarily have enough of the hep C viral load for hepatitis C to be detected? Isn't that what in fact happened with Mr. Muraga? Again, these tests occurred in 2022 and do not demonstrate that he did not have hep C during the relevant period of his complaints. And again- Okay, but you're saying your argument is that the injury from his hepatitis C is the gallbladder stones, correct? And the gallbladder issues, right? So his gallbladder issue was November 24th, 2022.  Right, so November 29th, 2022, he gets tested and there's no hep C virus detected. Yes, but based on the same specimen, there was an HCV antibody test that returned a reactive positive test. Right, well, that's what I'm asking. Is this like tuberculosis, where if you've been exposed to tuberculosis, you will test positive on a tuberculosis skin test, but you may not actually have it actively growing in your lungs? Your Honor, if medical logic indicates that when you have a positive results based off of a antibody test and then a negative RNA test, this indicates that the patient likely had hepatitis C at some point in the past. Right, it's a prior exposure, correct? It doesn't mean that they actively have it at that moment. Yes, yes, Your Honor. And that is in fact what the test showed on November 29th, 2022. There was no hep C virus detected in his viral load test, correct? Yes, but drawing all reasonable inferences in favor of Muraga, this does not mean that hepatitis C did not have a causal relationship on his further injury. In fact, as indicated at page 17 of Muraga's motion to supplement, Muraga's doctor stated that he thought the gallbladder... Let's go back. I still don't understand the MD-219 as requiring six month APRI scores for Mr. Muraga. Can you point me to what part of MD-219 I'm looking at ER-129 through 134? What specific section should I be looking at? Because the only one I see is on ER-131 that says any inmates with HCV who have been not treated with DAAs will be evaluated every six months, including a new APRI score. Yes. Where does it say that if you have ever previously either been exposed to hepatitis C or previously in the past had it, you still have to get a new APRI score every six months? Your Honor, that provision governs individuals that are enrolled in the chronic care clinic for HCV. So we can reasonably infer that that provision applied to Muraga. Wait, no, but what I'm asking you, where is that provision? It's at ER-131, Your Honor. I think you properly quoted it. But your co-counsel said this is what you're arguing is failure to comply with MD-219, correct? Correct. That is your argument. So where in 219 does it require six month new APRI scores for someone who does not have active hepatitis C? That is my question. Your Honor, Muraga did have hepatitis C. As Defendant Richards stated in her grievance response, you're not enrolled in the clinic unless there is a confirmation of a positive diagnosis for hep C. Okay, since I've not gotten an answer from you or your co-counsel, I'm going to assume that that requirement is not in MD-219. Is that correct? The requirement, we can reasonably infer it is from MD-219. But where? Where in the penumbra of MD-219 do I find that assumption or requirement? MD-219.02, Provision I, Your Honor. Stating that inmates enrolled in the clinic for hep C must be re-evaluated every six months. Okay, can you give me an ER site, please? ER-131. Okay, that's the same provision I've been reading. Yes. Any inmates with HCV, okay. What hepatitis treatment was, do you believe Mr. Muraga was denied? Is it the direct acting antivirals? No, it was the most minimal monitoring. Which is what? Which includes the re-evaluation of whether he qualified for DAA treatments every six months. So it's getting a new APRI score every six months? Well, yes, yes, Your Honor. I think enough for the questions. We'd like to reserve the remainder of our time for rebuttal. Thank you very much. Okay, thank you. I heard you. Is that okay? Go ahead, please. Okay, thanks. I appreciate the opportunity to address this court. My name is Chris Davis. I represent the appellees. First of all, I'd like to address this argument about MV-219. Because while we don't dis — while we disagree, and I think Your Honor is correct that there is no provision in there that we were required to give him an APR score every six months. Why not? Any inmates with HCV who have not been treated with DAAs — I think we all agree Mr. Muraga was not treated with DAAs — will be evaluated every six months, including obtaining a new APRI score. Why doesn't that apply to him? Because the first thing is he has to have hepatitis C, an active case of hepatitis C. Why isn't there a genuine dispute as to that fact? Well, because there is no objective medical evidence establishing that he has an active case of hepatitis C in the record. You have to have evidence in order to — But where does MD-219 says that it has to be active? I don't see a definition of HCV in this document. Right? It could apply to someone who had a prior exposure. I mean, previously in the past had hepatitis C. Your Honor, respectfully, our interpretation of MD-219 is that it has to be an active infection because only an active infection would endanger the health of the inmate. If there's not an active infection, there's no need to do an APRI score. The whole purpose of having MD-219 is to prevent inmates from damaging their liver, and if they don't have an active hepatitis C score, they're not going to have one. Once they've been — once they're cured of hepatitis C, they're not going to have — Okay, if I look at MD-219 — I'm sorry to interrupt you — it just defines HCV as chronic hepatitis C as diagnosed by a qualified medical practitioner. And Mr. Moraga was already in the chronic disease — infectious disease clinic. That's — that's correct, Your Honor. He was in the — he was in the disease clinic for two conditions. One was diabetes, and one was hypertension. When he did — when he — when he filed his — when he filed his grievance saying that he had hepatitis C, they then said, okay, well, we're going to have the chronic — since you're already in the chronic care unit, we're going to have you — we're going to have you evaluated for hepatitis C. And as Your Honor noted on the — But where did they — I don't see in ER-264 him being evaluated for hepatitis C. Well, he wasn't — well, it does. It says at the very top corner that they're coming in here to evaluate him for hepatitis C, but when they get to the assessment at the bottom, all they assess him with is hypertension and with diabetes. That says what he was diagnosed with having. That doesn't say what he was actually assessed and tested for. No, no, in the top right-hand corner. I know. The top right-hand corner says, check all that apply. And under infectious disease-specific illness, it says hep C. But if I look under the assessment, I don't see anything saying, we tested you for hep C, and you just don't have anything active or previous. Well, it doesn't say that with clarity, the clarity that I guess Your Honor wants. But because they didn't put down that he has hepatitis C, they didn't assess him with it. It's an assessment. We're assessing what you have. And they don't put down the assessment. Why isn't this — going back to Judge Johnson's question — why isn't this a genuine dispute of fact as to whether he was actually evaluated for hep C at this time? You know, Your Honor, I don't think it's whether or not — because, Your Honor, for example, those aren't the defendants we have in front of us. We don't have the defendants that evaluated him, the people that did the evaluations. What we have are three grievance responders. And that's — and so we're not even talking about who's doing the assessment or why, what there is. It's not a question of fact of whether they have an assessment. It's a question of fact of whether these people knew that he faced a substantial risk of serious harm from hepatitis C and then were deliberately indifferent to it. There's absolutely no evidence in the record that they had any inkling or knowledge that he had an active infection of hepatitis C in the record. Without that knowledge, they cannot be deliberately indifferent. And therefore — Hey, I'm looking at Dr. Miniv's declaration. He says, you know, as part of my duties, I oversee the chronic hepatitis C treatment program. I review the test results and medical records of NDOC inmates who are afflicted with hepatitis C to determine whether the inmates — well, there's a word missing — the inmates who require advanced forms of chronic hepatitis C treatment. So, in his grievance, he did not look at the test results or medical records for Mr. Muraga. He just said, oh, when you have your next appointment, go check with the nurse. You mean Dr. Miniv? Yeah, Dr. Miniv. I mean, he says in his declaration, I'm the one that reviews the test to see whether people are entitled to treatment. And at his — in his official response to the grievance, he just says, you know, the infectious disease and clinic nurse at your institution has been contacted to review your case. Again, Your Honor, I would say that what Dr. Miniv is saying is, is that in this particular instance, once this case became evaluated, he took it upon himself to review Mr. Muraga's case. What Mr. Miniv — what Dr. Miniv did in this particular instance was, he went and he went to a nurse and said, hey, make sure that NV219 is being followed. And that's what he did, because they didn't have any evidence. There was no evidence that he had an active infection of hepatitis C. And so what he did is — what was reasonable, which was he decided to do — to do that. I would like to talk a little bit about qualified immunity. Well, I guess first, I — you know, you've got a — some are proceeding pro se, and we're having trouble making sense of the record here. Where would you point us and Mr. Muraga to kind of the clearest statement that you think resolves the question of whether he was subject to 219? Because the test results — you know, not everyone are defendants here, but there's — whether it's a genuine issue, whether it's material, separate question. But this is a pretty messy record. Where should he look and where should we look to know for sure that he's not under 219? I mean, I'm not exactly certain — well, I think the clearest point is when Dr. Miniv says in his declaration that — just a second — Dr. Miniv states in his declaration that he does not have a chronic — he does not have a chronic infection of hepatitis C. I think that's the clearest point in the record. What — and the cite for that? That's ER 138.  And then, of course, that's in litigation after bringing these claims. Where in the underlying record do you think Mr. Muraga would have had the best chance to understand his situation given the confusion around his diagnosis? Well, I think part of it is that when Nurse Rambler says, you're not — when — not Nurse Rambler, Nurse Richardson, she indicates in the grievance, she says, you don't fall under the provisions of 219. She says that directly in her — when responding to that grievance. So I think that's also another clear indication. I would like to get — because the court asked us to review Carly, so I'd like to get to that. Let me ask you a question. Um, you know, the APRI score is February 25, 2022. And I agree with you. That shows that his APRI is normal. But he wasn't tested and given an APRI score from the time he first complained in January of 2021 until February of 2022. So you have a good 12 months, 13 months where he wasn't even tested. And —  Why isn't that a failure to monitor? Because — because when he was monitored, they came to the conclusion he didn't have hepatitis C. And I think that's — that's been proven with every — every record that you have shows that he doesn't have hepatitis C. So I don't see how you can possibly say that he did have hepatitis C anywhere in the record. I mean, because he didn't. But it — but it sounds like you agree that hepatitis C is something that can go sort of in and out of active status, right? No, Your Honor. No, I — sorry. I'm — Where is that in the record, though? That information? Your Honor, well, the best place to that, again, would be Dr. Mananov's declaration where he says he doesn't suffer from chronic hepatitis C. Right. But that declaration is based on the APRI score from February of 2022. And, Your Honor, we didn't have any reason to put — oh, sorry. We didn't have any reason to put any — I guess he also says lack of clinical signs. Right. But it's unclear whether he's talking about lack of clinical signs in 2022. Do you see the concern as was there a failure to monitor in 2021? I totally agree with you. In 2022, when Mr. Moraga had his gallbladder issues, there were no medical indications of hepatitis C. Because these are just grievance responders. These are not the treating doctors. It's the treating doctors who have the responsibility to monitor the conditions. In Peralta, for example, it said the chief — they had the chief dental officer there. And this court indicated that even though he was the chief dental officer, and in a dental case, they could — the chief dental officer could rely on the treating physicians to properly diagnose and treat the inmates. And that's what we have here. We have — because they couldn't possibly know. He wasn't — Dr. Mananov and these nurses were not his treating physicians. They were not the people seeing him. They were not the people — and that's probably the reason for the sparsity of the record. It's because these are not the people that were involved in his care. Well, I guess the record is not sparse in certain ways. It's confusing. He files the grievances and says, you're being monitored for HCV. You're being monitored — the program, they keep responding to him. From his perspective, he has an expectation that if he raises the complaint, that the person who's responding to his grievances has some sense of what's going on. And he's getting these mixed messages throughout that has left us with this record and spending most of our time trying to figure out exactly what — whether or not he actually has a fact at HCV. He was told mixed things over this time. Well, you know, I think you need to look at that in the chronological events, okay? So he files his grievance, right? And then Nurse Rambler notes, and then somebody, which is not part of the record, somebody, once he files his grievance, says, okay, we're going to set an appointment with respect to his chronic care clinic to evaluate him for hepatitis C, okay? Before that evaluation happens, Nurse Rambler responds and says, hey, you have been set for an appointment to be evaluated for this, right? So Nurse Rambler can't be delivered in indifference because she did everything properly. She said, hey, you want to be evaluated? You have an appointment? You're going to be evaluated. So Nurse Rambler's gone. You got Nurse Richardson, comes back, okay? Now he's been evaluated. He said it. And Nurse Richardson comes back and says, hey, you know, we went through it. We're going through the MD-219. You don't meet the qualifications for receiving treatment for hepatitis C. And therefore, she does what's right because after the evaluation, the doctor comes back and the assessment isn't for hepatitis C, and that's the case. Finally, it goes to Dr. Minev. Dr. Minev, out of the abundance of caution, even though with all of this other evidence in the record, comes back and says, okay, you know, he assigned a nurse to go out and look and monitor and see whether or not MD-219 was followed. And he's entitled to rely that that nurse is going to follow through with what he's asked her to do. And so he's done all the thinking. He's done all that he needs to do. And that's the reason why. And like Your Honor indicated, you know, this is on four floors with Carly because none of these individuals delayed or denied treatment. But it says even if they did, you know, the cases they rely on are simply too general. And the Supreme Court has told this court that, in particular, that not to define the clearly established right in a level of generality. That's what's going on here. This comes under all four of Carly's. And therefore, I respectfully request that defendants are entitled to qualify because they did not know he had hepatitis C, even if they suspected that he had hepatitis C. That's not enough under Farmer. You have to be actually aware that he had it. And there's nothing in this record that shows that they were actually aware. Mr. Davis, I believe there are two motions to supplement the record on appeal. I believe the plaintiffs moved first and then maybe to complete the record as a better sense. Are any of the documents that you're asking us to view on appeal, were those before the district court?  All those things that have been supplemented, that have been asked to be supplemented by both sides, were not before the district court. But the thing is, is that what was the ---- Should we grant that? Or was this a defensive motion by you to complete the record based on what the plaintiffs have said? Well, you know, what it was is, is that, you know, I was, you know, they decided I wouldn't have ---- I never tried to supplement the record on behalf unless there's some reason for judicial notice, which I don't think is here. But when they cherry picked and put a few pages in the record about, and doctors who initially opined based on Mr. Moraga's initial claim that he had hepatitis C with no tests at all, and then they put only a few pages. And then knowing that, you know, I decided, well, I'm going to go out and get the whole Carson Tahoe medical record. It sounds like your position is that you don't have a problem with the denial of your motion to supplement if we deny. Their motion to supplement, none of these are before the district court. No, that's true, Your Honor.  Thanks. All right, thank you. You have two minutes for rebuttal. Two points on rebuttal, Your Honor. First, Moraga would like to clarify that NDOC 219 applies to Moraga because it applies to all inmates with chronic hepatitis C, and no way does it require an active infection. As Defendant Richards' grievance response states, individuals are not enrolled in the chronic care clinic unless a positive hepatitis C diagnosis is confirmed. And second, to the extent that this court is unsatisfied with the record. But didn't he get enrolled in clinic because Mr. Moraga asked to? I thought your whole position is that he was never tested until February of 2022, and so he was just enrolled because he asked to be enrolled. Then in no way does the record state that he was enrolled because he asked to be enrolled. Well, where does it show that he had hepatitis C other than his reactive test exhibit A, SMR 61190, November 26, 2022? We would point this court to the grievance responses by Defendant Minev and Defendant Richards where they stated- Right, so there's nothing in the record then showing that he had chronic hepatitis C then? We can reasonably infer from the grievance responses, Your Honor, that he had- Okay, let's go through the grievance responses, and I'd like you to respond to your opposing counsel's argument. So with regard to Nurse Ramber, she has no authority to order hep C treatment. She has not seen or treated or met with Mr. Moraga. She's just reviewing the grievance, right? She's not his care provider, and she says, you have an upcoming medical appointment with the provider. Please discuss your hepatitis C status at that appointment. Yes, absolutely, Your Honor. Right, and she has no authority to order any hep C treatment, and she's not his care provider. Yes, this court has never required the finding of personal participation to require the defendant to have personally treated the inmate. For example, in Snow v. McDaniel, this court found that the warden and associate warden were liable for deliberate indifference. Okay, but you do need to prove that this nurse was on notice, that Mr. Moraga was not being monitored by the chronic care clinic in accordance with MD 219, don't you? You have to show that they were on notice, that he was not being treated in compliance with MD 219. Yes. And how do you do that? And in Defendant Minev's grievance reviewed by Defendant Ramber, he stated that he was not being treated for hepatitis C as far back as his first request for treatment in November of 2020. And one can reasonably info, based on the summary judgment standard, that this would put Defendant Ramber on notice. And as to Defendant Minev... Okay, let's go to Richard. You are enrolled in chronic care clinic and have been monitored regularly for hepatitis C treatment. You were last seen in the chronic care clinic on February 18, 2021. You do not currently qualify for hepatitis C treatment consideration based on the above criteria, and it goes through all the APRI scores. You have been seen regularly to monitor your hepatitis infection. The medical directive has been followed. And I can go through... She goes specifically through hepatitis 219, and... It goes through all of the requirements that Mr. Moraga does not meet. I guess I'm unclear based on this. How... Yeah. How Nurse Richard is on notice that the care clinic who is providing the monitoring and treatment is not doing its job? The care clinic did not provide Moraga with monitoring, and we can infer that based on the grievance he provided to Nurse Richard. And she falsely stated that he was being monitored and did not meet the criteria. The record only indicates one APRI score that was ever obtained for Moraga, and that was in February of 2022, over a year after his grievances. There is no evidence that the defendants have submitted in the record that he did not actually qualify for this advanced treatment. You know, if I look at the original complaint, Mr. Moraga said, I am entitled to immediate treatment for my hep C condition. You have sort of changed your argument solely to monitoring. That's not really the argument that was really made in your briefing. And it was more he was denied treatment for... And that's also what Mr. Moraga's complaints mostly have been about, is that he thought he was entitled to hep C treatment. And it was denial of his treatment, delay of his treatment, that caused the gallbladder issues. When you say that's really been more what his argument has been, and now it's kind of been morphing into a monitoring argument, correct? No, Your Honor. So at ER 215, in Moraga's first amended complaint, he states that I have never been seen on regular monitoring for my hep C. And again, I have never had any medical treatment for hepatitis C. So liberally construing his pleadings based on his status as a pro se plaintiff in accordance with this court's holding in Thomas v. Ponder, he did... Let's look at his grievances. On November 22, 2020, I requested to start the hep C treatment. As of today's date, I have not received an answer. But anyway, let me go ahead and let you finish. I see that my time has expired. May I briefly conclude? Yes, very briefly. Yes. Defendants Menev, we can reasonably infer that defendants Menev, Richard, and Rambo had knowledge based on their grievance responses. And for these foregoing reasons, we respectfully request that this court grant Moraga's motion to supplement the record and judicial notice, deny defendant's motion to supplement the record, reverse on Moraga's eighth amendment claim, and remand on the issue of qualified immunity. Thank you very much. Thank you very much.
judges: HURWITZ, KOH, JOHNSTONE